DUKE *et al. v.* STONE *et al.*

(Division B. Nov. 23, 1936.)

[170 So. 675. No. 32404.]

**Brunini & Hirsch** and **W. W. Ramsay,** all of Vicksburg, and **R. L. Smallwood, Jr.,** of Oxford, for appellants.

**L. C. Andrews**, of Oxford, for appellees.

James **Stone & Sons**, of Oxford, for appellees.

Argued orally by **Phil Stone** for appellee.

. **Ethridge, P. J.,** delivered the opinion of the court.

The appellants, Minnie Clyde Duke and others, who were related to W. L. Goodwin, deceased, filed a bill in the chancery court of Lafayette county, setting up that W. L. Goodwin, on August 5, 1907, executed his last will and testament, a copy of which was filed with the bill; that on May 3, 1919, W. L. Goodwin having died on January 5, 1919, Henrietta E. Goodwin, his wife and only heir at law, and as the executrix named in his will, filed said will for probate in the chancery court. Under the terms of his will, Henrietta E. Goodwin was the beneficiary of a life estate in said property, and the brothers and sisters of W. L. Goodwin, or the descendants of their bodies, per stirpes, were devised one-half of the remainder, and the other half was devised to Luvenia E. Walker, the sister of Henrietta E. Goodwin. It was alleged that at the time of the death of W. L. Goodwin there were five surviving brothers, setting forth their names, and at the time of the filing of the bill only one was living, but the other complainants are descendants of those who are dead.

It was also alleged in the bill that the estate of W. L. Goodwin, at his death, real, personal, and mixed, amounted to approximately two hundred thousand dollars, and that, at such time, the estate of Henrietta E. Goodwin did not exceed five thousand dollars. It was also alleged that Henrietta E. Goodwin made a will, a copy of which is made an exhibit to the bill, and that from the time of the death of her husband until the time of her own death she intrusted all the details of her financial transactions to James Stone, Sr., who was appointed and qualified as the executor under her last will and testament, without giving bond or filing an inventory. It was also alleged that appellants have no way of ascertaining the property left by W. L. Goodwin, as distinguished from the property owned personally by Hen-

rietta E. Goodwin; that by the will of her deceased husband she was not required to render an accounting and make an inventory, and that all the information necessary to determine the rights of the parties, the books, papers, documents, vouchers, notes, deposit slips, etc., is exclusively within the knowledge, power, and custody of James Stone, Sr., individually and as executor of the estate of Henrietta E. Goodwin, and that it is indispensable to the ends of justice that such papers, etc., be exhibited before the court, and the bill prayed that James Stone, Sr., individually and as executor, be required to answer the allegations of the bill, and to produce, for inspection, all the papers mentioned above, left by W. L. Goodwin, and in the possession, or under the control of Stone, and that he be required to give a full and exact accounting of the funds in his hands, showing the items claimed by Henrietta E. Goodwin as personal, and the items in which she had a life estate under the will of her husband.

Appellee James Stone, Sr., filed an answer either admitting the allegations of the bill, or disclaiming information as to part of the bill. The answer denied, on information and belief, that the estate of W. L. Goodwin was worth two hundred thousand dollars, and stated that he was never worth more than fifty thousand dollars; denied that Henrietta E. Goodwin's estate did not amount to more than five thousand dollars, but alleged, on information and belief, that said estate amounted to, approximately, forty thousand dollars; denied that said Henrietta E. Goodwin intrusted the management and control of her financial transactions to Stone, or that he acted, in all things, as her agent, but alleged that he was frequently consulted by her in a professional capacity, but there were many transactions in which she was concerned that the said Stone was not consulted about; that during this period the health of said James Stone, Sr., was such that he had no connection with the business of

said Henrietta E. Goodwin, and was not advised by her, in any way, as to the management thereof. That his only connection was in a professional capacity. He further stated that he was at no time the attorney of W. L. Goodwin, or possessed of any of his papers, and never did have such data; but, upon information and belief, he stated that W. L. Goodwin, prior to his death, actually disposed, by gift and otherwise, of all his property, real, personal, and mixed, in the payment of his debts, and the remainder to his wife; that said W. L. Goodwin had converted practically all his property into money, and that such conversion was done for the purpose of avoiding liability under a suit brought against him and others by the creditors of the Merchants & Farmers Bank of Oxford, Miss., as directors thereof, for the sum of, approximately, forty thousand dollars. He further stated that the complainants have no right whatever to the books, papers, documents, vouchers, notes, deposit slips, etc., because none of them relate to the estate of W. L. Goodwin, deceased.

The complainants also filed a petition for the removal of James Stone, Sr., as executor, and for the filing of an inventory or accounting as to the estate of Henrietta E. Goodwin. The court declined to remove Stone, as executor, but required him to give bond in the sum of thirty-five thousand dollars, and to file an inventory before June 15, 1935, and to bring all funds belonging to said estate which were outside the state into the state before June 15, 1935.

The will of W. L. Goodwin, deceased, after giving a bequest of ten dollars to his adopted daughter, Mrs. Daisy Goodwin Taylor, in item 2 disposes of the remainder as follows: "All the residue and remainder of my entire estate, I give and bequeath to my beloved wife, Mrs. Henrietta E. Goodwin, during her life; and at her death, if any part of my estate be unused by her, it shall be divided according to the following provisions, to-

wit:—One-half of my entire estate so remaining at her death shall go to my brothers and sisters, in equal parts, or to the descendants of their bodies, per stirpes, if any be deceased; The other one-half of such remainder shall go to my beloved wife's sister, Mrs. Luvenia E. Walker, if living, or to the descendants of her body, per stirpes, if she be deceased."

As stated, Henrietta E. Goodwin was made executrix, without bond, and she was to make no accounting to the court.

The, will of Henrietta E. Goodwin, made an exhibit to the bill, provides for Mrs. C. B. Teat, of Oxford, and then provides that the balance of her estate at the time of her death be divided into two classes, one of which was to consist of two-thirds of her estate, and to be in class 1; the other one-third to be in class 2, and the proceeds of class 1 was to be. divided among her nephews, Leonard, Lester, and Emmett Walker, in as equal proportions as she was able to estimate. The will then stated that Leonard and Lester Walker had each received, approximately, six thousand five hundred dollars, including interest, and that Emmett Walker had received but one thousand five hundred twenty-five dollars on which he had been paying interest, and that Emmett was to have, approximately, the same as the others. Of the net proceeds of class 2, there was a disposition to provide for her husband's brothers and sisters, of whom there was only one surviving, consequently, she devised one-fifth to Tom Goodwin, of Waco, Tex., if living, and, if not, to his widow and children, in equal parts and the other four-fifths was devised as follows, one-fifth each to the children of the deceased brothers and sisters of W. L. Goodwin. The will provided that if any person attempted to contest it, such person should forfeit all benefits thereunder, which benefits should be ratably distributed to those who do not participate in such contest. There were some subsequent bequests in this will not material to set out.

The case came on for trial before the chancellor, and it appeared from statements of counsel during the trial that the attorneys for complainants had access to the books and papers of Henrietta E. Goodwin's estate. It further appeared that W. L. Goodwin, who died in January, 1919, in the early part of October or the early part of November, 1918, sold out his interest in a mercantile partnership business in which he was engaged for, approximately, ten thousand dollars, and that all books, accounts, notes, etc., of said business were assigned to his partner, Brown. Brown testified that Goodwin never discussed his private affairs with him, but that checks given to Goodwin in settlements were marked "paid" from his account in the bank. It was also shown by the testimony, as stated, that a suit was instituted by the creditors of the Merchants & Farmers Bank against the directors, and that the will was probated for the purpose of enabling the executrix, Henrietta E. Goodwin, to act in defending said suit, in which a judgment was rendered by the chancery court against the directors for an amount not material to here state. It also appears that between October, 1918, and the death of W. L. Goodwin in January, 1919, large sums of money were drawn from his bank account, and a considerable amount of money, during said period, was deposited to the credit of Henrietta E. Goodwin, and that the property sold by W. L. Goodwin, prior to his death, was afterwards reacquired by Henrietta E. Goodwin by purchase.

There was no showing by complainants, and no evidence was introduced relative thereto, as to what property W. L. Goodwin actually owned at the time of his death, and no showing as to what property, if any, went from his estate, at his death, to Henrietta E. Goodwin.

James Stone, Sr., was not put on the witness stand as an adverse witness to show that his answer was not a fair and full disclosure as to what property, if any, to his knowledge, passed from W. L. Goodwin at his death

to his wife, although the complainants might have so used him to develop any material facts bearing on the litigated issues. It does not appear from the record what inventory, as required by the decree above mentioned, was filed by Stone. Appellants contend that the burden of proof is upon Stone to make a showing, but the trial of the cause did not proceed upon this theory. As stated, it appears that the attorneys had access to all data and property in the possession of Stone, and if these were material, why were they not introduced?

The evidence tended to show that W. L. Goodwin disposed of all his property, and the burden is upon complainants to show what property passed to the executrix under the will of W. L. Goodwin, before it became incumbent upon Stone, as executor of the will of Henrietta E. Goodwin, to render any accounting, or to introduce any proof as to what became of the property which may have passed to her, as beneficiary under the will of W. L. Goodwin.

The chancellor dismissed the bill on the theory that the complainants should have offered proof to show what property W. L. Goodwin passed under his will, and his judgment must be affirmed.

Affirmed.